IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:04cr240-MHT |
| QUENTIN T. DUNN | ) | (WO) |
| | ) | |

OPINION AND ORDER

This criminal case is now before the court on
defendant Quentin T. Dunn's objection to the Probation
Department's recommendation to apply an enhancement,
pursuant to U.S.S.G. § 2K2.1(b)(5), to his sentence for
two gun-related offenses.  To resolve the objection, the
court must consider a matter of first impression in the
Eleventh Circuit Court of Appeals regarding when a
defendant has obstructed justice under 18 U.S.C.
§ 1512(c).

I. BACKGROUND

Robert Puckett was found murdered in his home in
Hoover City, Alabama, on April 7, 2004.  The next day,

the Hoover City Police Department interviewed defendant Quentin T. Dunn, a former police officer who had been hired by Puckett to investigate the fidelity of Puckett's estranged wife.

At the time of his death, Puckett owned numerous firearms and firearm components, commonly known as "Class 3" weapons, and, in accordance with federal law, had registered the Class 3 weapons in his name in a national database.  On April 14, the United States Department of Alcohol, Tobacco, and Firearms (ATF) opened an investigation because some of Puckett's Class 3 weapons were missing from his home.  Included among the missing weapons were several silencers, several short-barreled rifles, and a machine gun.  Dunn was not aware that ATF had begun investigating Puckett's missing Class 3 firearms.

On November 14, 2004, the Hoover City Police Department again interviewed Dunn regarding Puckett's murder.  During the interview, officers asked him about

Class 3 firearms.  Dunn said that he knew what Class 3 firearms were, but denied having any in his possession. Dunn, who was not a subject of the ongoing ATF investigation at this time, was still unaware of the ATF investigation.

On November 20, Dunn transferred eleven Class 3 firearms (which were registered in Puckett's name) and several non-Class 3 firearms to James "Buck" Jones, a confidential informant working with the Hoover City Police Department in connection with the murder investigation.  In conversations leading up to the transfer and during the transfer itself, which were recorded by Jones, Dunn expressed an interest in hiding the Class 3 weapons and disposing of the other weapons.

On November 24, Dunn was arrested by ATF agents, who had been notified by Hoover police that Dunn had transferred the Class 3 weapons.  On November 30, Dunn was indicted for possessing eleven firearms that are required to be registered with the federal government but

3

that were not registered in his name, all in violation of
26 U.S.C. §§ 5841 and 5861(d); and transferring those
same firearms without registering the transfer, which
violated 26 U.S.C. §§ 5812(a) and 5861(e).  On February
1, 2006, a jury found Dunn guilty on  both counts.[1]

Prior to sentencing, the Probation Department
prepared a pre-sentence investigation report.  At the
government's behest, the Probation Department included a
four-level    enhancement    pursuant    to    U.S.S.G.
§ 2K2.1(b)(5), which applies if the instant gun offense
was   committed   "in   connection   with   another   felony
offense."  The other felony offense identified by the
Probation Department was obstruction of justice, 18
U.S.C. § 1512(c), which prohibits the destruction of
physical evidence with the intent to thwart an "official

---

1. Dunn was also charged and convicted of possessing
a machine gun, in violation of 18 U.S.C. § 922(o) and
924(a)(2).  That count, however, was dismissed by consent
of the parties at the initial sentencing hearing held on
April 20, 2006.

proceeding."  Dunn timely filed an objection to this enhancement.

At the initial sentencing hearing on April 20, 2006, the court took evidence on this issue and ordered supplemental briefing as to whether the investigation by ATF into the missing Class 3 firearms is an "official proceeding," as defined by 18 U.S.C. § 1515(a)(1).

## II. DISCUSSION

Pursuant to 18 U.S.C. § 1512(c), anyone who "corruptly (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so" commits the felony of obstruction of justice.  The term "official proceeding" is defined, in relevant part, as:

5

> "(A) a proceeding before a judge or court of the United States ... or a Federal grand jury;
>
> "(B) a proceeding before Congress;
>
> "(C) a proceeding before a Federal Government agency which is authorized by law; or
>
> "(D) a proceeding [before various insurance regulatory agencies]."

18 U.S.C. § 1515(a)(1).

"An official proceeding need not be pending or about to be instituted at the time of the [obstructive act]" for a person to obstruct justice. 18 U.S.C. § 1512(f)(1). "It is, however, one thing to say that an official proceeding 'need not be pending or about to be instituted at the time of the offense,' and quite another to say a proceeding need not even be foreseen." Arthur Anderson LLP v. United States, 544 U.S. 696, 125 S.Ct. 2129, 2137 (2005). Accordingly, the Supreme Court recently held in Arthur Anderson that an "official proceeding" must at least be foreseeable at the time of

the obstructive act before a person can be liable for obstruction of justice under § 1512.  Id.

Although the Arthur Anderson Court did not define when something is foreseeable, that question is well-established in criminal law jurisprudence.  Under the so-called Pinkerton doctrine of co-conspirator liability, conspirators are liable for the reasonably foreseeable acts of their co-conspirators in furtherance of the conspiracy, United States v. Aduwo, 64 F.3d 626, 629 (11th Cir. 1995) (citing Pinkerton v. United States, 328 U.S. 640 (1946)), and "an act is reasonably foreseeable if it is 'a necessary or natural consequence of the unlawful [conduct],'" United States v. Cover, 199 F.3d 1270, 1275 (11th Cir. 2000) (citing United States v. Martinez, 924 F.2d 209, 210 n. 1 (11th Cir. 1991)).[2]

---

2.  Although a defendant need not have actual knowledge of the "official proceeding" for it to be foreseeable, see United States v. Alred, 144 F.3d 1405, 1420 (11th Cir. 1998) (explaining that while "actual knowledge of the coconspirator's firearm possession is not required ..., possession must be reasonably foreseeable"), the "official proceeding" is not (continued...)

The government contends that the ATF investigation into Puckett's missing Class 3 firearms is an "official proceeding," and that it was foreseeable that ATF would investigate their disappearance because Class 3 weapons are designed to kill efficiently and silently.[3]

i.

_____

2. (...continued)
foreseeable just because it is possible, compare Cover, 199 F.3d at 1275 (saying that something is "foreseeable" if it is "a necessary or natural consequence"), with Black's Law Dictionary 1221 (7th Ed. 1999) (defining "possibility" as "[a]n event that may or may not happen").

3. At the initial sentencing hearing, the government also argued that Dunn's actions interfered with the Hoover City Police Department's investigation into Puckett's murder. However, it is clear from § 1515(a)(1) that an "official proceeding" must, at a minimum, involve a federal entity. Because the Hoover Police Department and state courts are not a federal entity, the investigation and possible state court prosecution--it is undisputed that any prosecution for Puckett's murder would occur in state court--cannot be considered as an "official proceeding." Thus, even assuming Dunn obstructed state proceedings, the federal obstruction of justice statute is not implicated because state proceedings are not "official proceedings" under § 1515(a)(1).

The definition of "official proceeding" in § 1515(a)(1) does not expressly include criminal investigations. Nonetheless, the government suggests that the ATF investigation, standing alone, is an "official proceeding" because it is a "proceeding before a Federal Government agency," 18 U.S.C. § 1515(a)(1)(C). This court has not identified a single case that supports this contention.[4] More importantly, it is clear that "a proceeding before a Federal Government agency which is authorized by law," 18 U.S.C. § 1515(a)(1)(C), refers to hearings, or something procedurally similar, held before federal agencies. Not only does the common and ordinary understanding of "proceeding" connote a hearing, see Black's Law Dictionary 1221 (7th Ed. 1999) (defining

---

4. Both cases cited by the government are inapposite because both courts clearly found that the defendant had obstructed a proceeding before a federal court, see United States v. Ortiz, 367 F.Supp.2d 536, 541 (S.D.N.Y. 2005); United States v. Alvarez, 352 F.Supp.2d 356, 358 (E.D.N.Y. 2005) (both citing 18 U.S.C. § 1515(a)(1)(A) as the "official proceeding" that the defendant had obstructed), not a proceeding before a federal agency, 18 U.S.C. § 1515(a)(1)(C).

9

"proceeding" as a hearing or any procedural means for seeking redress from a tribunal or agency), but the term "proceeding" is also used throughout § 1515(a)(1) to describe events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony, Congressional testimony, and insurance regulatory hearings, 18 U.S.C. § 1515(a)(1)(A), (B), & (D).

The government makes the alternative argument that the ATF investigation is an "official proceeding" because it is "a proceeding before a ... court of the United States." 18 U.S.C. § 1515(a)(1)(A). As already explained, an investigation is not a "proceeding," as that term is commonly understood. Moreover, although investigations may ultimately lead to proceedings before a federal court or federal grand jury, investigations, in and of themselves, do not necessarily occur "before a ... court of the United States." This is not to say that an "official proceeding" cannot subsume an investigation,

that is, the court is not drawing a bright line between investigations and "official proceedings." For example, there may be some situations where the investigation occurs incident to an ongoing "official proceeding." But that is not the case here.

To the extent the government is arguing that an investigation that leads to proceedings in federal court (for example, a federal criminal prosecution) is itself an "official proceeding" under § 1515(a)(1)(A), that argument is not supported by the plain language of the statute or by logic. The statute says that an "official proceeding" is a proceeding before a court; it does not say that an "official proceeding" is anything that leads to a proceeding before a court. Although a criminal prosecution is a proceeding before a federal court (and therefore an "official proceeding"), it does not follow logically that an investigation is also an "official proceeding" simply because it leads to a prosecution.

The government nonetheless asserts that Congress intended the broadest possible construction of "official proceeding," one broad enough to include an investigation within its meaning. Although the government cites § 1512(f)(1), it is hard to see how a provision stating that an "official proceeding" need not be under way provides any insight into what an "official proceeding" is. Although Congress wrote the obstruction statute to cover conduct that precedes the institution of an "official proceeding," this does not change the fact that Congress defined "official proceeding" using terms that are inconsistent with an investigation. Had Congress intended for an investigation, standing alone, to be an "official proceeding," it could easily have included "investigations into violations of the federal criminal statutes" among the definitions in § 1515(a)(1).

Additionally, neither case cited by the government, United States v. Ortiz, 367 F.Supp.2d 536 (S.D.N.Y. 2005), and United States v. Alvarez, 352 F.Supp.2d 356

(E.D.N.Y. 2005), actually stands for the proposition that an investigation is an "official proceeding."[5]  In fact, Alvarez could not stand for that proposition because the defendant there did not even obstruct an investigation; instead, he submitted a false statement, under penalty of perjury, to a federal judge in conjunction with a pretrial motion to suppress evidence from being introduced at his federal criminal trial.  352 F.Supp.2d at 357.  The Alvarez court simply held that a defendant who lies in pretrial filings in a federal criminal trial has attempted to obstruct his federal prosecution, which is an "official proceeding."[6]  Id. at 358.

---

5. Both cases are also factually distinguishable.  In both, the defendants had already been indicted and were being prosecuted in federal court at the time of the alleged obstruction.  Ortiz, 367 F.Supp.2d at 538; Alvarez, F.Supp.2d at 356-57.  Here, Dunn was not under indictment, was not aware of ATF's investigation, and was not even a subject of the ATF investigation at the time he transferred the weapons.  Even if the legal holdings of Ortiz and Alvarez helped the government's position, their persuasive value is minimal because they are so factually dissimilar from the present case.

6. The government therefore takes the Alvarez court's
(continued...)

13

In <u>Ortiz</u>, the defendant learned, one year after being indicted in federal court for conspiracy to commit robbery, that federal agents were searching for his car, which the prosecution wanted to use as evidence in his trial on the conspiracy charge, and the defendant told his girlfriend to get rid of the car. 367 F.Supp.2d at 539. The conversation with his girlfriend was recorded, and an obstruction-of-justice count was included in a superseding indictment. <u>Id</u>. After being convicted at trial, the defendant challenged the government's failure to prove that his actions were likely to affect "the trial on the other charges in the indictment." 367 F.Supp.2d at 541. The parties did not raise, and the

---

6. (...continued)
observation that an "official proceeding includes not only the discrete parts of a criminal prosecution [], but also the sum of those parts," 352 F.Supp.2d at 358, completely out of context. The defendant argued that because he lied to the court during the pretrial motion to suppress, he had not obstructed an "official proceeding." <u>Id</u>. The court, in the passage cited by the government, was making the unremarkable point that a pretrial proceeding before a federal judge during a prosecution in federal court is as much an "official proceeding" as the trial itself.

14

court did not address, whether an investigation is an "official proceeding." To the extent the court's discussion provides any insight into that question, however, the court appears to have considered "the trial on the other charges in the indictment," id., and not the agents' search for his car, to be the "official proceeding" the defendant obstructed by directing his girlfriend to dispose of the car.[7]

Ortiz therefore highlights the subtle but significant distinction between an investigation and a federal criminal prosecution. Generally, for evidence to be used

---

7. The government notes that the indictment in Arthur Anderson listed the "official proceedings" as "regulatory and criminal proceedings and investigations," 125 S.Ct. at 2134, and then suggests that the Supreme Court's failure to vacate the conviction in Arthur Anderson on the ground that the indictment was defective supports its position that investigations are "official proceedings." The Court expressly declined to reach the question of what constitutes an "official proceeding," 125 S.Ct. at 2137, n.10 (declining to address whether "informal inquiries" are covered by the statute), so making an inference based on the Court's silence would be improper. In any event, Arthur Anderson did not challenge the sufficiency of the indictment on appeal, so it is hardly surprising that the Court did not consider an issue which was not properly before it.

at a criminal trial, it must be obtained by law enforcement agents through investigations. Because of § 1512(f)(1), a prosecution need not be underway and an indictment need not have been obtained for efforts to conceal evidence from investigators to expose a person to liability for obstructing the criminal prosecution. Accordingly, a person who conceals evidence from law enforcement agents may effectively be preventing evidence from being used in an "official proceeding," if that evidence is being sought for use in a federal criminal prosecution (which is unquestionably a "proceeding before a ... court of the United States"). This holds true even if the federal prosecution has not yet been initiated and only an investigation is underway. However, such liability attaches only when the "official proceeding," the federal criminal prosecution, is foreseeable.

In sum, the court holds that the ATF investigation into Puckett's missing Class 3 weapons, standing alone, is not a "proceeding before a ... court of the United

States," 18 U.S.C. § 1515(a)(1)(A), and is not a "proceeding before a Federal Government agency," 18 U.S.C. § 1515(a)(1)(C). Accordingly, Dunn is guilty of obstructing justice only if a prosecution in federal court in which the Class 3 weapons would be material was foreseeable at the time Dunn transferred the weapons.

Based on the facts and circumstances of this case, the court holds that such a prosecution was not foreseeable. For a prosecution to be foreseeable, a person must at least have an inkling that he is the target of an investigation. Without such knowledge, that person only knows that he committed a crime and the federal government may or may not detect it. He knows only that a prosecution "may or may not happen," Black's Law Dictionary 1221 (7th Ed. 1999) (defining "possibility").

At the time of the transfer, Dunn was not aware that ATF was investigating the missing weapons, and Dunn was not even a suspect of the ATF investigation that was on-

going.   Essentially, at this point in time, ATF was merely looking into the fact that several weapons were missing; they had no suspects.  Although Dunn had broken the law, many crimes go unpunished; indeed, many crimes go undetected.  Simply put, at the time of the transfer, a prosecution in federal court was not a necessary or natural consequence of Dunn's possession of the Class 3 firearms.  Thus, this court finds from the evidence that, as to Dunn, this prosecution was not foreseeable at the time of the transfer; it was merely  possible.[8]

---

8.  The government argues that this outcome is problematic because it "rewards" defendants for disposing of evidence of their wrongdoing before they are detected. The government invokes the example of a child pornography user who covers up his crimes by destroying emails and computer drives before being indicted and would avoid prosecution for both possessing child pornography and obstruction.

To the extent that government is suggesting that this person could destroy evidence of wrongdoing after becoming aware that the wrongdoing had been detected by federal authorities and not suffer any consequences, the government's concern is unfounded.  If it is foreseeable that a federal grand jury will be empaneled to consider an indictment at the time the files are destroyed and the files would be material to that grand jury investigation,
(continued...)

ii.

Even assuming that the ATF investigation, standing alone, is an "official proceeding," Dunn's objection is due to be sustained for because the government has failed to prove by a preponderance of the evidence that it was foreseeable that ATF would investigate.  The government suggests that the investigation was foreseeable because numerous Class 3 firearms, which are dangerous weapons designed to kill, had gone missing.  However, the government failed to present any evidence that it was foreseeable that ATF would detect that those weapons were missing.

To be sure, ATF went to Puckett's residence to take inventory of his Class 3 weapons, but the government

8. (...continued)
our hypothetical defendant would be guilty of obstruction.  But the inquiry must always be into whether the grand jury or federal court proceedings are foreseeable, not whether the investigation by law enforcement agents is foreseeable--although awareness that a person's wrongdoing and his participation in it have been detected by federal authorities could be powerful evidence that a grand jury or federal court proceeding is foreseeable.

19

presented no evidence that ATF does this as a standard practice, that is, that it is foreseeable that ATF will inventory the estate of a deceased owner of Class 3 weapons to ensure that no weapons are missing. Indeed, the government presented no evidence at all that Dunn was even aware that ATF <u>might</u> do so.[9]  Moreover, the government did not present evidence that it was foreseeable that the Hoover City Police Department would learn that the Class 3 weapons were missing during its investigation into Puckett's murder and know to notify ATF of that fact.

---

9. The government cites a transcript in which Dunn refers to a "watch list" as a reason for throwing certain firearms away.  Had Dunn been referring to the eleven Class 3 firearms when making that statement, it might help the government's case that Dunn knew an ATF investigation was forthcoming.  However, the government conveniently failed to cite the exchange immediately preceding the cited portion, which makes it clear that Dunn was referring to a pistol, and not any of the Class 3 firearms, when he referred to a watch list.  There is no evidence that the handgun is regulated by federal law, so his reference to a watch list reveals that he was concerned with being detected by the state authorities investigating Puckett's murder and not ATF.

20

Although it may well be foreseeable that ATF will investigate missing Class 3 weapons if it is aware that such weapons are missing, the government simply has failed to present sufficient evidence that it was foreseeable to Dunn that anyone would bring the missing weapons to ATF's attention.[10]   Put another way, the government has not presented sufficient evidence that it was foreseeable to Dunn that ATF would detect that Puckett's Class 3 weapons were missing in the first place.

\*\*\*

Based on these two independent grounds, the court concludes that the government has not proven by a

_____

10. Although it is not necessarily foreseeable that anyone would detect that Puckett's Class 3 weapons were missing (many crimes go undetected), during the interview with the Hoover Police one week before Dunn transferred the weapons, those investigators asked him about Class 3 weapons.  Although there is no evidence that the police told Dunn that they knew that Puckett's Class 3 weapons were missing, the question may well have suggested to him that they knew Puckett's weapons were missing.

preponderance of the evidence that Dunn obstructed justice.

It is therefore ORDERED that Dunn's objection to the enhancement of his sentence pursuant to U.S.S.G. § 2K2.1(b)(5) is sustained.

DONE, this the 31st day of May, 2006.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE